UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| WILLIAM HENRY KEEL | : | DOCKET NO. 08-166 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff to this action, William Henry Keel, initially filed an application for disability insurance benefits on June 20, 2005, claiming disability due to chronic back pain and problems with his left leg beginning January 21, 2005. Transcript at 17, 31. Plaintiff's application for benefits was denied, and plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* at 31, 35. On June 4, 2007, a hearing was held. *Id.* at 201-20. At the hearing, plaintiff, represented by a non-attorney representative, testified, along with his wife, a vocational expert, and a medical expert. *Id.* The ALJ issued a written decision on July 26, 2007 finding plaintiff not disabled within the meaning of the Social Security Act based on the application filed June 20, 2005. *Id.* at 17-24.

On August 9, 2007, plaintiff requested that the Appeals Council review the ALJ's decision and attached a letter in support. *Id.* at 12-13, 199-200. On October 22, 2007, plaintiff,

now represented by legal counsel, submitted argument that neither principles of law nor substantial evidence support the ALJ's decision. *Id.* 198. The Appeals Council denied plaintiff's request for review of the decision, noting that it found no reason under its rules to review the ALJ's decision. *Id.* at 5-7.

Pursuant to 42 U.S.C. § 405(g), plaintiff requested that this court review the decision of the Commissioner to determine if it complies with applicable law and is supported by substantial evidence. This court finds that it is.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is

present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1421, 28 L. Ed. 2d 842 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## DISCUSSION

The burden of proving that he or she suffers from a disability[1] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (2000)).

---

[1] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

3

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)).

Once the claimant has made an appeal, the Appeals Council may decide to grant review, deny review, or dismiss the appeal. "[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision." *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

Here, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. Specifically, the ALJ found that 1) plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; 2) plaintiff's severe impairments included avascular necrosis[2] and osteoarthritis[3] of the left hip; and 3) plaintiff's impairments do not meet or exceed any listed impairment. Transcript at 19. The ALJ concluded that plaintiff's RFC allows him to perform sedentary work, does not allow him to crawl, and allows him to occasionally stoop or crawl. Transcript at 20. Plaintiff's RFC prevents him from working at unprotected heights,

---

[2] Avascular necrosis, also known as osteonecrosis, is the "necrosis [process of death] of bone due to obstruction of its blood supply." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1180, 1289 (29th ed. 2000).
[3] Osteoarthritis is defined as "a noninflammatory degenerative joint disease. . . ." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1286 (29th ed. 2000).

4

pushing or pulling with his left leg, and requires the use of a cane in his right, dominant hand. *Id.*

Based on the assigned RFC, the ALJ determined, with the aid of a vocational expert, that plaintiff could not perform his past relevant work, and so went on to step five of the determination. Again enlisting the aid of the vocational expert, the ALJ found that plaintiff could perform the requirements of the full range of sedentary work and therefore found that plaintiff not disabled. *Id.* at 23.

In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 461. Before this court, plaintiff argues:

1. The ALJ failed to properly perform a function by function assessment of his exertional limitations in determining his RFC

2. The ALJ failed to comply with Social Security Ruling 83-14 when trying to apply the Medical Vocational Guidelines when used as a framework.

**I.**

Plaintiff asserts first that substantial evidence does not support the ALJ's decision because the ALJ failed to comply with 20 C.F.R. §§ 404.1545 and 416.945, and Social Security Ruling 96-8p. Doc. 18, at 5. Plaintiff argues that the ALJ must perform a full function-by-function assessment of a claimant's physical, mental, and sensory abilities, according to Social Security Administration rulings and regulations to accurately determine a claimant's RFC, including a claimant's exertional and non-exertional limitations. *Id.* Plaintiff argues that the ALJ failed to perform a function-by-function analysis of the strength demands set out in the

above cited ruling and regulations and that this failure prejudiced the plaintiff because the strength limitations materially affect plaintiff's ability to perform sedentary work. *Id.* "In particular, the ALJ failed to discuss [plaintiff's] need to alternate between sitting and standing." *Id.* According to plaintiff, his sitting limitations are much more restricted than credited by the ALJ. *Id.* at 6-7. Instead of being limited to sedentary work without sitting limitations, plaintiff argues that his "ability to sit is much more restricted." Plaintiff argues:

> The Plaintiff testified during his hearing that he is only able to sit for 30 or 40 minutes before he has to "get up and walk around." The [medical expert] testified that the MRI and x-ray results indicate that the Plaintiff suffers with avascular necrosis of the left hip. He explained that this condition is "consistent with the kind of pain that he has." Although the [medical expert] testified that the Plaintiff had the exertional ability to do a sedentary "type" of function, he clarified that the Plaintiff "requires frequent sitting, standing every hour or two."

*Id.* at 6 (citing Transcript at 207, 213, 214).

According to plaintiff, had the ALJ made the appropriate considerations, he would have found that the occupational base for a full range of sedentary work is eroded due to plaintiff's alleged need to alternate between sitting and standing. *Id.* (citing Social Security Ruling 96-9p). "Without doing a function by function assessment, the ALJ committed reversible error because he and the [vocational expert] failed to effectively communicate the frequency of the plaintiff's need to alternate between sitting and standing." *Id.* According to plaintiff, had the ALJ performed a function by function assessment, "he likely would have found that the testimony from the [p]laintiff and medical expert at the hearing was credible. The ALJ would have adopted the [medical expert's] opinion that the plaintiff requires frequent sitting and standing every hour or two." *Id.* at 6-7. Plaintiff argues: "Such a constant need to alternate between sitting and standing cannot be neatly scheduled during regular work breaks or during a lunch period and

6

thus it would significantly erode the occupational base for sedentary work for the reasons stated in [Social Security Ruling 96-9p]. *Id.* at 7.

To support her claim that the ALJ erred, plaintiff cites *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001). In *Myers*, the appeal court relied on Social Security Ruling 96-8p to clarify the meaning and assessment of a claimant's RFC. The court noted that, according to Social Security Ruling 96-8p, the ALJ must make a "'function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities.'" *Meyers*, 238 F.3d at 620. With regard to both step four (determining if a claimant can perform past relevant work) and step five (determining if a claimant can perform other jobs in the national economy), Social Security Ruling 96-8p requires that the ALJ assess an individual's capacity to perform all exertional and non-exertional functions associated with a given exertional level, such as sedentary. Social Security Ruling 96-8p; *Meyers*, 238 F.3d at 620. Exertional capacity involves the ability to sit, stand, walk, lift, carry, push, and pull. *Meyers*, 238 F.3d at 620. Each exertional function must be considered separately, although they may be paired in a final RFC assessment. *Id.* The *Meyers* court noted, "'In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . .'" *Id.* (quoting Social Security Ruling 96-8p). The adjudicator must also resolve any inconsistencies in the evidence. *Id.*

The *Meyers* court also discussed Social Security Ruling 96-9p, noting that the "'impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. . . . [T]he conclusion whether such individuals are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.'" *Id*. (quoting Social Security Ruling 96-9p).

In *Meyers*, the court determined that the ALJ failed to address all of the concerns associated with Social Security Rulings 96-8p and 96-9p, especially with regard to her ability to perform all of the exertional demands of sedentary work. The court explained:

> [The ALJ] found that [plaintiff] could sit, lift, and carry ten pounds; would need a sit/stand option; and would need to stretch every thirty minutes. The ALJ failed, however, to fully address standing, walking, and pushing/pulling. The ALJ also failed to set out whether Myers could perform these demands on a regular and continuing basis. Perhaps most importantly, the ALJ failed to resolve the inconsistencies in the evidence. He relied on the opinion of the [medical expert], Dr. Craig, who did not examine or treat Myers, but based his conclusion that she met the requirements for sedentary work on an incomplete reading of the treating physicians' reports. However, the medical evidence as a whole indicates that Myers cannot meet the requirements. For example, Dr. Haddad diagnosed a ruptured disc, Dr. Johnston diagnosed degenerative disc disease, and Dr. Davidson put stricter restrictions on Myers's capacity.

*Id.* at 620-21.

In the instant case, the ALJ did not include any limitations to plaintiff's RFC with regard to his ability to sit. Transcript at 21. In making this determination it is evident that the ALJ reviewed all the evidence of record and resolved inconsistencies, as required by *Myers*. The ALJ noted, "claimant testified that it hurt him to sit, though he was prescribed 2 different pain medications. He testified that he experienced pain without activity that started in his left hip and radiated down to his thigh." *Id.* The ALJ noted that it was the opinion of the medical expert that plaintiff was capable of performing sedentary work. *Id.* at 22; *see also* Transcript at 214. The ALJ determined that plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not entirely credible and were not supported by the medical records which "contain[ed] no references to intractable hip pain." *Id.*

For plaintiff to meet the exertional limitations related to sitting, he

> must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break *at approximately 2-hour intervals*. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work.

(emphasis added). Notably, 96-9p also states, "RFC is the individual's *maximum remaining ability to perform sustained work on a regular and continuing basis*; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule. *It is not the least an individual can do, but the most, based on all of the information in the case record.* (emphasis added); *Perez*, 415 F.3d at 461; 20 C.F.R. § 404.1545(a)(1).

At the hearing, the medical expert opined that plaintiff "would be rated the ability to do a sedentary type of function . . . . He, as his, and his testimony requires frequent sitting, standing every hour or two. He's just got to move to adjust his position to try to be more comfortable." Transcript at 214. The medical expert's testimony is consistent with plaintiff's RFC because plaintiff may sit for a maximum of approximately two hours before needing to stand. Thus plaintiff has not shown that the ALJ erred when he did not assign plaintiff a sitting limitation in his RFC.

"'[T]he ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). Substantial evidence supports a conclusion that the ALJ weighed conflicting evidence and resolved the conflicts while fully considering the possibility of a limitation on plaintiff's ability to sit before assigning his RFC. A reasonable mind could accept from the record that plaintiff was capable of performing the sitting limitations associated with sedentary work. *Moore*, 919 F.2d at 905.

9

## II.

Plaintiff's second argument builds from his first. Plaintiff asserts that "because a function by function assessment of the Plaintiff's sitting and standing limitations was not performed, the [vocational expert] was not allowed the opportunity to consider the full extent of the plaintiff's limitations." Doc. 18, at 9. Plaintiff asserts that this failure prevented the ALJ from "meaningfully questioning the [vocational expert] about the extent of the erosion that the [p]laintiff's sitting and standing limitations would have on the sedentary occupational base." *Id.* "Without such analysis and determination," argues plaintiff, "the ALJ's use of the grid rules as a framework for issuing decisions is inconsistent with the guidelines set forth under [Social Security Ruling] 83-14." *Id.*

The opinion of the ALJ notes "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations. Transcript at 23 (citing Social Security Rulings 83-12 and 83-14).

According to the framework as set out at Social Security Ruling 83-14,

> The usual requirements apply for a clear, persuasive, orderly rationale, reflecting the sequential evaluation process. There must be findings of fact and recitation of the evidence which supports each finding. Whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.
>
> In reaching judgments as to the sufficiency of the remaining exertional job base . . . , there are three possible situations to consider:

> 1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.
> 2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.
> 3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a [vocational specialist, such as a vocational expert] will be necessary.

(internal citations omitted).

In the instant case, the ALJ determined it proper to enlist the aid of a vocational expert, noting "the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." Transcript at 23. The ALJ consulted the vocational expert to determine whether jobs exist in the national economy for an individual with the plaintiff's age, education, work experience, and the RFC adopted by the ALJ. *Id.* "The vocational expert testified that given all of these factors the individual would be able to perform the requirements of the full range of sedentary work." *Id.*

The ALJ asked the vocational expert two hypothetical questions. First, he asked whether there would be any erosion on the sedentary work base given a hypothetical individual:

> 45 years of age who has completed a GED, having a residual functional capacity from an exertional standpoint for sedentary work, as that term is defined in the Code, further characterized and limited by the following criteria. Crouching is entirely prohibited. Stooping and crawling are . . . not to exceed the occasional . . . . Individual is further precluded from working at significant unprotected heights . . . and requires the use of a cane in the right dominant hand to ambulate and further is prohibited from a requirement to use the left leg for pushing or pulling in the performance of his work activities.

*Id.* at 217. The vocational expert replied that "[t]he vast majority of the jobs that are in the sedentary work base are going to be with a seated and you can alternate between sitting and standing with these occupations so at least based with this particular hypothetical, there would not be any erosion on the sedentary unskilled work base. *Id.* at 218.

The ALJ asked a second hypothetical of the vocational expert, this time allowing that the hypothetical individual needed the ability to alternate sitting and standing at will. *Id.* The vocational expert responded that this would not change his determination of no erosion of the sedentary unskilled work base. *Id.*

In the opinion of the ALJ, it is clear that he adopted hypothetical one, which corresponds to the RFC assigned to plaintiff. This RFC contains no limitation on plaintiff's ability to sit and substantially mirrors the hypothetical person described in the hypothetical. Transcript at 20, 217. As discussed in the previous section of this report and recommendation, the court finds that substantial evidence supports the ALJ's decision that plaintiff meets the exertional requirements for sitting associated with sedentary work. For this reason, substantial evidence supports the ALJ's adoption of hypothetical one.[4] That is, the ALJ properly chose, based on this evidence which hypothetical question to credit. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (noting that the ALJ may rely on portions of the vocational expert's testimony without adopting it in full). It is the ALJ's job to weigh evidence and to choose what evidence to credit. *Perez*, 415 F.3d at 461. This court has reviewed the decision of the ALJ and found that substantial evidence supported the ALJ's decision. *Id.*

## CONCLUSION

For the foregoing reasons,

---

[4] Plaintiff argues that the term "at will" in the second hypothetical was too vague of a limitation for the vocational expert to consider. Because the ALJ did not adopt the second hypothetical, whether the term "at will" provided meaningful guidance to the vocational expert need not be addressed here.

IT IS RECOMMENDED that the Commissioner's determination be AFFIRMED and that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on this 4th day of March, 2009.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE